In re Jeffrey Dale THOMAS, Debtor.

Charles GEBHARDT, Plaintiff,

v.

Jeffrey Dale THOMAS, Defendant.

Bankruptcy No. 95–60321.
Adv. No. 96–6027.

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Oct. 29, 1996.

Roger J. Allen, Dallas, TX, for Debtor/Defendant.

Alan Gerger, Houston, TX, for Plaintiff.

## MEMORANDUM OPINION ON DISMISSAL FOR WANT OF JURISDICTION

C. HOUSTON ABEL, Bankruptcy Judge.

Jeffrey Dale Thomas (the "Debtor") seeks dismissal, contending the discharge complaint filed by Charles Gebhardt ("Trustee") was filed untimely. The Trustee responds that the Debtor waived any untimeliness argument when he voluntarily agreed to extend the deadline. The parties thus ask this Court to resolve a split of authority. One line of cases holds the rules for discharge and dischargeability actions are jurisdictional, and another holds they are procedural. Construing United States Supreme Court and Fifth Circuit precedent, this Court holds the deadlines are jurisdictional. The Court dismisses this adversary proceeding for want of subject matter jurisdiction.

### Jurisdiction

This Court has jurisdiction over the Debtor's bankruptcy case and properly filed discharge and dischargeability complaints under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference. A complaint challenging discharge and dischargeability of debts involves core issues. 28 U.S.C. § 157(b)(2)(I), (J).

The Court always has jurisdiction to determine its own jurisdiction. *Ceres Gulf v. Cooper,* 957 F.2d 1199, 1207 n. 16 (5th Cir.1992); Fed.R.Bankr.P. 7012(b) [Fed.R.Civ.P. 12(h)(3) ]. "[T]he parties cannot waive lack of jurisdiction by express consent, or by conduct, or even by estoppel; the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants." 13 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3522, at 66–67 (2d ed.1984) (citing *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) for express consent, *Mitchell v. Maurer,* 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934) for conduct, and *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951) for estoppel; other citations omitted).

### Historical Facts

1. The Court takes judicial notice of the historical facts established by the file and docket in the bankruptcy case. *E.g. Wilson v. Huffman (In re Missionary Baptist Found. of Am.),* 712 F.2d 206, 211 (5th Cir. 1983) (citations omitted).

2. The Debtor filed a pro se petition for relief under Chapter 7 of the Bankruptcy Code on March 13, 1995 (D.E. 1).

3. The Bankruptcy Clerk mailed the Notice of Commencement of Case ("Commencement Notice") on March 13, 1995 (D.E. 4). The Commencement Notice indicated that the initial meeting of creditors was scheduled for April 21, 1995.

4. On April 6, 1995, the Clerk sent a "Corrected Notice—First Meeting Rescheduled" ("Second Commencement Notice"). The Second Commencement Notice reflected that the initial meeting of creditors had been rescheduled for May 3, 1995. It also indicated the deadline for filing discharge and dischargeability complaints would be July 2, 1995.

5. The Debtor did not appear on May 3, 1995, so the meeting was rescheduled for July 26, 1995. In the interim, the Debtor sought dismissal of his bankruptcy case (D.E. 21, 22), but the motion ultimately was dismissed for lack of prosecution. (D.E. 40, 41). The creditors' meeting commenced on July 26, 1996 and was continued to August 18, 1995.

6. The Interim Trustee filed the first Trustee's Motion to Extend Time to File Objection to Debtor's Exemptions and Objection to Discharge on August 2, 1995 (D.E. 26).

7. The Order Extending Time to File Objection to Debtor's Exemptions and Objection to Discharge was entered on August 10, 1995 (D.E. 28). The deadline for discharge complaints was extended until 45 days after the conclusion of the creditors' meeting.

8. Charles Gebhardt was elected trustee (D.E. 34, 38).

9. The Trustee filed the Second Motion to Extend Time to File Objection to Debtor's Exemptions and Objection to Discharge on September 29, 1996 (D.E. 42).

10. On October 10, 1995, the Court entered its Order Granting Extension of Time to File Objection to Debtor's Exemptions and Objection to Discharge in which the deadline for discharge complaints was extended until thirty days after the December 19, 1995 deadline (D.E. 44).

11. On January 17, 1996, the Trustee filed a third Motion to Extend Time to File Objections to Exemptions and for Filing Complaints Objecting to Discharge (D.E. 82). The Trustee sought an additional thirty days to file complaints and object to discharge.

12. On January 29, 1996, the Court entered an order which granted the third extension request (D.E. 88).

13. On February 16, 1996, the Trustee filed the Complaint Objecting to the Debtor's Discharge.

14. The Debtor seeks dismissal of the discharge complaint, contending the Interim Trustee's first application was untimely, and the Court was without power to extend the filing deadline when it issued its first exten-

sion order. The Trustee responds that the Debtor agreed to extensions and that it would be inequitable to prohibit the extension.

### Procedural Posture

The Debtor filed a motion to dismiss, Fed. R.Bankr.P. 7012(b) [Fed.R.Civ.P. 12(b)(1)], or, alternatively, a motion for summary judgment. Fed.R.Bankr.P. 7056. The landmark Fifth Circuit case for evaluating the procedural posture is *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). In the pending case the Court concludes it lacks subject matter jurisdiction based on "the complaint supplemented by undisputed facts evidenced by the record," so dismissal is proper. *Williamson,* 645 F.2d at 413.

### Legal Analysis

■ 15. Three interpretations have developed regarding the time periods for discharge and dischargeability actions. The first group of courts holds the time periods are jurisdictional. A second group implicitly holds the deadlines are not jurisdictional because extensions are allowed when attorneys are misled by court error. A third line of cases explicitly holds the deadlines are not jurisdictional. *See European Am. Bank v. Benedict (In re Benedict),* 90 F.3d 50, 53–54 (2d Cir.1996) (separating case groups and citing cases in each category).

16. In determining the deadlines in the discharge and dischargeability rules are jurisdictional, this Court disagrees with several circuit courts of appeal. Nevertheless, this Court construes Supreme Court and Fifth Circuit authority as mandating a different result.

TEXTUAL ANALYSIS:

■ 17. The Court commences its analysis with the text of the applicable statute and rules. "[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); *see also Taylor v. Freeland & Kronz,* 503 U.S. 638, 643–

44, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992) (applying plain meaning doctrine to bankruptcy rules). This Court must attempt to give meaning to every clause and word of a statute. *Negonsott v. Samuels,* 507 U.S. 99, 106, 113 S.Ct. 1119, 1123–24, 122 L.Ed.2d 457 (1993) (citing *Moskal v. United States,* 498 U.S. 103, 109–110, 111 S.Ct. 461, 465–466, 112 L.Ed.2d 449 (1990)).

## APPLICABLE CODE AND RULES:

18. If the debtor is an individual, the Bankruptcy Code provides that the Court shall "grant a discharge, unless" the debtor's actions fall within a category of specifically prohibited conduct. 11 U.S.C. § 727(a). "Except as provided in section 523 of this title [the section governing dischargeability of particular debts], a discharge ... discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502...." 11 U.S.C. § 727(b).

19. Section 523 prohibits the dischargeability of particular debts, and these debts include debts incurred by wrongful conduct. 11 U.S.C. § 523(a)(2), (4), (6), (15). The applicable portion of section 523(c) specifies, "the debtor shall be discharged from a debt of the kind specified in paragraph (2), (4), (6) or (15) ... unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge...." 11 U.S.C. § 523(c)(1).

20. The statutes do not define the time periods for filing objections to discharge or dischargeability of particular debts. The rules define these periods.

21. Federal Rule of Bankruptcy Procedure 4004 provides in part:

(a) In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a),.... Not less than 25 days notice of the time so fixed shall be given to the United States trustee and all creditors....

(b) On motion of any party in interest, after notice on hearing, the court may extend for cause the time for filing a complaint objecting to discharge. The motion shall be made before such time has expired.

(c) In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case pursuant to Rule 1017(e), the court shall forthwith grant the discharge unless (1) the Debtor is not an individual, (2) a complaint objecting to the discharge has been filed, (3) the Debtor has filed a waiver under § 727(a)(10), or (4) a motion to dismiss the case under Rule 1017(e) is pending. Notwithstanding the foregoing, on motion of the debtor, the court may defer the entry of an order of discharge for 30 days and, on motion within such period, the court may defer entry of the order to a date certain.

Fed.R.Bankr.P. 4004.

22. Federal Rule of Bankruptcy Procedure 4007(c) provides:

A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than thirty days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after notice on hearing, the court may for cause extend the time so fixed under this subdivision. The motion shall be made before the time has expired.

Fed.R.Bankr.P. 4007(c).

## THE BINDING PRECEDENT CONSTRUING THE EXEMPTION PROVISIONS:

23. The Court commences its analysis by drawing from the Supreme Court's construction of the exemption statute and rule. In *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the Supreme Court of the United States held that the Chapter 7 trustee's failure to object to exemptions within "30 days after the con-

clusion of the meeting of creditors...." barred the objection. *Taylor*, 503 U.S. at 642, 112 S.Ct. at 1647–48 (construing Fed. R.Bankr.P. 4003(b)). "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor*, 503 U.S. at 644, 112 S.Ct. at 1648.

24. The Supreme Court recognized that the debtor in *Taylor* had no reasonable basis in law to claim the exemption and that the holding might lead to improper conduct. *Taylor*, 503 U.S. at 644, 112 S.Ct. at 1648. The Court explained that these problems could be addressed by other provisions of the Code and that Congress could remedy any perceived harms. *Taylor*, 503 U.S. at 644–45, 112 S.Ct. at 1648–49. Although the Code and Rules have been amended since *Taylor*, the exemption, discharge and dischargeability time periods have remained unaltered.

■ 25. Based on *Taylor*, the Fifth Circuit has held that the time periods for filing objections to exemptions are jurisdictional. *Stoulig v. Traina (In re Stoulig)*, 45 F.3d 957, 957–58 (5th Cir.1995) (per curiam) (affirming *Stoulig v. Traina*, 169 B.R. 597 (E.D.La.1994) "essentially for the reasons stated in the district court's careful and well considered opinion"). The rules are read literally without considering equitable factors. *Stoulig*, 169 B.R. at 601 & n. 8.

### SIMILARITIES BETWEEN DISCHARGE AND DISCHARGEABILITY PROVISIONS AND EXEMPTION PROVISIONS:

26. The legislative history and phrasing in the discharge and exemption rules support a similar construction of the time bar rules.

27. Although evaluating policy and legislative history are unnecessary when the plain meaning is clear, an evaluation of the legislative history reflect that the discharge and exemption provisions serve the same goals. Congress expressly recognized that the exemptions and the discharge were cornerstones of the "fresh start".

28. Exemptions provide the debtor with basic necessities. Congress allowed lien avoidance in exempt property because it "protects the debtor's exemptions, his dis-charge, and thus his fresh start...." S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5862.

29. The discharge relieves the debtors from the burdens of his debts. The discharge statute "is the heart of the fresh start provisions." Sen.Rep. 95–989, 95th Cong., 2d Sess. 98 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5884.

30. Because exemptions and discharge are the foundation for the fresh start, it is not surprising that exemption and discharge provisions are structured similarly. Like the exemption statute, the discharge and dischargeability statutes are framed in mandatory terms. Like the exemption statute, the discharge and dischargeability statutes do not contain deadlines. The deadlines are in the rules.

31. Like the exemption rule, the discharge and dischargeability rules are excluded from the "excusable neglect" standard. Fed.R.Bankr.P. 9006(b). Like the exemption rule, the discharge and dischargeability rules link to the initial meeting of creditors. The longest period for the commencement of the creditors' meeting is sixty days after the order for relief. Fed.R.Bankr.P. 2003(a). Thus, the connection between the initial meeting and the deadlines expedites prompt exemption and discharge determinations.

32. The Court believes the Supreme Court would construe the discharge and dischargeability rules like the exemption rule because of the commonalities in purpose and structure. The Court therefore holds that the *Taylor* "plain meaning" construction applies to discharge and dischargeability actions. Under *Taylor* and *Stoulig*, the Court is without jurisdiction to consider untimely discharge or dischargeability actions.

### EXISTING FIFTH CIRCUIT PRECEDENT STRICTLY CONSTRUES TIMELINESS REQUIREMENTS FOR DISCHARGE AND DISCHARGEABILITY ACTIONS:

33. The Court's holding is supported by Fifth Circuit precedent interpreting the discharge and dischargeability rules. Although the Court finds no Fifth Circuit case holding that the discharge and dischargeability dead-

lines are jurisdictional, the Fifth Circuit strictly and narrowly construes the discharge and dischargeability deadlines. Therefore, the Court's jurisdictional construction is consistent with this precedent.

34. For example, the Fifth Circuit has held:

a. that clerk error does not excuse an untimely discharge or dischargeability objection, *Neeley v. Murchison*, 815 F.2d 345 (5th Cir.1987);

b. that a motion to modify the stay which referenced state court litigation involving "general allegations of fraud" did not meet the specificity requirements for discharge and dischargeability complaints, *Covert v. McGuirt (In re McGuirt)*, 879 F.2d 182, 183–84 (5th Cir.1989);

c. that the deadline for discharge and dischargeability of debts is tied to actual notice of the bankruptcy case rather than formal notice of filing deadlines, *Sanchez Ramos v. Compton (In re Compton)*, 891 F.2d 1180 (5th Cir. 1990); and

d. that creditors cannot rely on other creditors' motions for extension of the dischargeability time period, *Ichinose v. Homer Nat'l Bank (In re Ichinose)*, 946 F.2d 1169, 1173 (5th Cir.1991);

35. In 1989, almost three years before the issuance of *Taylor*, the Fifth Circuit noted, "we are unmoved by ... [the creditor's] claim that the strict application of a seemingly arbitrary filing deadline imposes undue hardship. As we recently remarked in an analogous context, '[u]nder the Bankruptcy Code and rules, creditors play a zero-sum game in which the failure to navigate effectively through various intricate procedures can mean total defeat.'" *McGuirt*, 879 F.2d at 184 (quoting *Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.)*, 863 F.2d 393, 398 (5th Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989)).

DISTINGUISHING CASES FROM OTHER CIRCUITS:

36. Since the issuance of *Taylor*, at least three courts of appeals have issued opinions in which they condone untimely discharge and dischargeability complaints. Although each of these cases was decided after *Taylor*, the cases generally do not address the Supreme Court's decision. *European Am. Bank v. Benedict (In re Benedict)*, 90 F.3d 50 (2d Cir.1996); *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 634 (6th Cir.1994) (discussing *Taylor*); *Themy v. Yu (In re Themy)*, 6 F.3d 688 (10th Cir.1993); *Allred v. Kennerley (In re Kennerley)*, 995 F.2d 145, 148 (9th Cir.1993); *Anwiler v. Patchett (In re Anwiler)*, 958 F.2d 925, 927–28 (9th Cir.), *cert. denied*, 506 U.S. 882, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992).

37. One rationale for these decisions is that statutes of limitations are contained in statutes, that such statutes are not jurisdictional, and therefore the bankruptcy rules, being less than statutes, cannot define jurisdictional limitations. This argument ignores Supreme Court holdings that federal rules of procedure such as the appellate time tables are jurisdictional. (*United States v. Robinson*, 361 U.S. 220, 224, 80 S.Ct. 282, 285–86, 4 L.Ed.2d 259 (1960)) (holding appellate timetable "mandatory and jurisdictional"); *see also Carlisle v. United States*, —— U.S. ——, ——, 116 S.Ct. 1460, 1468, 134 L.Ed.2d 613 (1996) (citing *Robinson* and holding court was without power to consider motion for judgment of acquittal which was filed one day late).

38. An alternative rationale is policy. For example, under facts remarkably similar to those of this case, the Court in *Benedict* thought it would be "inequitable to allow [the debtor] ... to enter into a stipulation extending the time for [a creditor] ... to determine dischargeability and then to allow her to object to an order extending the time once the stipulation no longer serves her purposes." *Benedict*, 90 F.3d at 55.

39. These policy arguments are the same ones which the Supreme Court summarily discarded in *Taylor*. The Supreme Court and the Fifth Circuit have applied the "plain meaning" of the statute and rules and concluded that Congress and the Bankruptcy Rules Committee have weighed the policy implications.

40. The cases generally find the Court's authority to allow untimely complaints in 11

U.S.C. § 105(a). In *Isaacman,* the Sixth Circuit distinguished *Taylor* on the basis that "the Supreme Court expressed no opinion as to whether the bankruptcy court could circumvent a strict reading of the bankruptcy rules through its equitable powers." *Isaacman,* 26 F.3d at 634. The Sixth Circuit concluded that the bankruptcy court retained its section 105 powers.

41. The Fifth Circuit disagrees. First, the Fifth Circuit holds that parties may not rely on clerk or Court error. *Neeley v. Murchison,* 815 F.2d 345, 345–46 (5th Cir. 1987) (holding that clerk's misstatements and failure to provide notice did not excuse creditor's failure to file untimely complaint). Second, the Fifth Circuit's holding that the exemption deadline is jurisdictional was based on the premise that equitable considerations were improper. *Stoulig v. Traina (In re Stoulig),* 169 B.R. 597, 599–600 (E.D.La. 1994), *aff'd,* 45 F.3d 957 (5th Cir.1995). Thus, the Fifth Circuit implicitly disagrees with the *Isaacman* court's contrary conclusion. Third, the Fifth Circuit holds that section 105(a) may be used "to further the substantive purposes of the Bankruptcy Code ..." and "take other necessary steps in aid of [the bankruptcy court's] ... jurisdiction." *United States v. Sutton,* 786 F.2d 1305, 1307 (5th Cir.1986). The Fifth Circuit has reserved the question of whether section 105(a) allows the bankruptcy court to extend the discharge and dischargeability deadlines for all creditors on one creditor's motion. *Ichinose v. Homer Nat'l Bank (In re Ichinose),* 946 F.2d 1169, 1175 (5th Cir.1991). When the Court reserved this issue, it emphasized that "the motion must be made before the time has expired." *Ichinose,* 946 F.2d at 1175 n. 6 (citing Fed.R.Bankr.P. 4007(c)). The reserved issue involves interpretation of the parameters of the Code and rules. It does not involve encroachment of rules.

42. This Court exercises its section 105 powers within the constraints of the Code and rules, and it does not construe its powers as being broad enough to resuscitate an expired deadline. The Court's function is limited to application of the "plain meaning" of the statute and rules. Based on the Supreme Court and the Fifth Circuit precedent, the Court concludes the rule is jurisdictional.

**APPLICATION OF LAW TO THE FACTS OF THIS CASE:**

43. Because the date for the initial meeting of creditors was changed from April 21 1995, to May 3, 1995, two possible dates for the expiration of the discharge and dischargeability dates are possible. Rule 4004(a) provides that a discharge complaint "shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Fed. R.Bankr.P. 4004(a). This language is retained in the dischargeability rule. Fed. R.Bankr.P. 4007(a).

44. Some courts hold that rule 4004(a) means the first date that the meeting of creditors is set so the date the meeting actually occurs has no relevance. These courts refer to the word "set". Other courts conclude that the word "held" in the rule means the meeting must actually commence. *See Datson v. Cote (In re Datson),* 197 B.R. 1, 3–4 (D.Me.1996) (analyzing cases under both views and holding that the initial date is the relevant one). When one compares the language of the discharge and dischargeability rules to the exemption rule, a plain construction which gives meaning to all words seems evident, yet the Court need not resolve that issue. Under either line of authorities, the Interim Trustee's motion for extension was untimely.

45. Sixty days after April 21, 1995, the date originally set for the first meeting, would have been June 20, 1995. Sixty days after May 3, 1995, the second date set for the first meeting, was July 2, 1995. The Interim Trustee did not seek extension until August 2, 1995, almost a month after the second date set for the creditors' meeting. By that time, the Court's jurisdiction had expired.

46. The Court's actions were confusing. The Court should have recognized that the Interim Trustee's first motion was untimely, but the Court was without power to resuscitate the discharge time period. The Interim Trustee's delay, not the Court's error, caused the problem. The Court also recognizes that the Debtor's failure to appear at the credi-

tors' meeting and the ostensible agreement to extend the discharge deadlines do not merit reward. On the other hand, the Debtor has been harmed. The discharge is designed to occur promptly, and a debtor should not have to wait a year to learn that the discharge action will be prosecuted. The Court has become more vigilant in monitoring these extension motions.

47. Creditors and trustees can seek timely extension of the discharge and dischargeability deadlines, and they can enforce the time deadlines for the initial meeting by seeking dismissal if the Debtor fails to appear. The Code and rules provide ample protections for creditors.

48. Appropriately, others have balanced the policy considerations. This Court does not have a "roving commission" to do equity. *United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986). Therefore, the Court will issue an order dismissing this adversary for lack of subject matter jurisdiction.